In re Erasto J. Arjona Siaca et al., Respondents.

No. 21.   Argued March 1, 1929.—Decided November 7, 1929.

R. Arjona, F. Colón and E. Campos del Toro, for respondent E. Arjona; J. B. Soto, Agustín E. Font, Wilson P. Colberg and R. Atiles Moreu, for respondent Guillermo S. Pierluisi. José E. Figueras, Fiscal of the Supreme Court and R. Quiñones, district fiscal of Ponce, for The People.

Mr. Justice Hutchison delivered the opinion of the court.

On Tuesday, April 19, 1927, Dr. Emilio Cumpiano commenced an action in the District Court of Ponce against Juan M. Pacheco and Atilano Garay to obtain the delivery of a pool ticket, the original value of which had been greatly enhanced as the result of a race meet held in Ponce on the preceding Sunday, April 17th.

When served by the marshal on Tuesday afternoon with an order for delivery of the pool ticket, Garay stated that it was in the hands of his attorney, and Pacheco that it was in the possession of attorney Erasto Arjona.

On the morning of the next day, Wednesday, April 20th, Arjona was served with a like order. He denied that the ticket was in his possession and offered to cooperate with the court in an effort to find it.

Shortly thereafter Arjona appeared at the office of Guillermo S. Pierluisi and began the preparation of a notarial instrument which purported to have been executed on April 18th before Pierluisi as a notary public. By its terms Pacheco pledged the pool ticket to one José M. Gómez as security for a pre-existing debt. Pierluisi was absent during the forenoon, but returned to his office early in the afternoon. Arjona completed his work at or about five o'clock. He then read the document aloud in the presence of the parties and witnesses. After they had signed he submitted it to Pierluisi for authentication. Pierluisi called Arjona's attention to the error as to the date. Arjona replied that the error could be corrected in the morning of the day following when revenue stamps, which were not at the moment available, were to be attached. All parties concerned acquiesced in this suggestion, and Pierluisi signed as notary.

Within a few minutes after the execution of this antedated contract Cumpiano's attorney was informed of it. Within another few minutes he presented himself at Pierluisi's office with a court order for the delivery of a copy of the instrument. Pierluisi gave the attorney a certified copy

and told him that an error had been committed in the drafting of the original. The district attorney was awaiting receipt of this copy. Detectives, if not already at work on the case, had been called to aid in the investigation.

Both Arjona and Pierluisi are capable young men of previous good repute, quite recently admitted to the bar. The First Assistant Attorney General (at the time Acting Attorney General) and other character witnesses took the stand on behalf of Arjona. One of the Ponce district judges and an assistant district attorney came across the island to express their unshaken confidence, and that of the community, in Pierluisi, of whom they speak in terms of the highest praise.

Pierluisi had been practicing as an attorney at law and notary public only three months when the contract of pledge was executed. He knew nothing about the pending litigation over the pool ticket. He did not have any interest in the contract. His services as notary were gratuitous. The instrument was number eighteen of his first protocol. His only connection with the execution thereof was the affixing of his signature and seal upon the understanding that the error in date would be corrected on the morning of the next day.

Whatever purpose Arjona may have had in antedating the instrument did not become a common design, because it was abandoned when Arjona and the contracting parties agreed, as a condition precedent to signature by Pierluisi, that the error as to date would be corrected. What Pierluisi intended to authenticate was not the antedated document which lay before him already signed by the parties and witnesses, but that document as it would appear in his protocol after the rewriting of the first two pages on the following morning. His indiscretion, however great, is explained by his youth and inexperience. There was no malpractice in a sense that would justify disbarment because there was no *mens rea*. The lesson received as a result of the present proceeding should be enough to protect the public from any

recurrence of such an incident, in so far as Pierluisi is concerned.

The case of Arjona stands upon a different footing.

The false date in the first paragraph of the contract of pledge was not a clerical error. On the second page, in the third clause of the instrument, there is a reference to "the horse races run on the 17th of April, 1927, that is to say, yesterday." The contract was drawn by Arjona on Wednesday, April 20th. At that time "yesterday" was Tuesday, April 19th (the day on which Cumpiano commenced his action). The close correspondence between the false date in the first paragraph and the false reference in the third clause of the contract is self-evident. The false date, if it stood alone, might have been an honest mistake. The careful wording of the third clause of the contract to conform to the false date in first paragraph was not a slip of the pen. The coincidence between the false date and the false reference was not an accident.

The motive is supplied by section 1766 of the Civil Code which provides that—

"A pledge shall not be effective against a third person, when evidence of its date does not appear in a public instrument."

It is true that Arjona never offered the antedated contract in evidence at the trial of the Cumpiano case. It is also true that in a certified copy of the instrument issued to Gómez the third paragraph thereof is shown to have been amended and the false date in the first paragraph to have been corrected. It may be conceded that Arjona's promise to reform the instrument would have been kept even if counsel for Cumpiano and the district attorney had been less alert or had not taken immediate action. The promptness with which he abandoned his purpose when Pierluisi pointed out the discrepancy in the date may be taken as an indication that the offer to amend was made in good faith. These are extenuating circumstances.

Perhaps Arjona did not fully realize the seriousness of an offense that would be ample ground for the permanent disbarment of an older and more experienced practitioner. Youth and inexperience might turn the scale, as in the case of Pierluisi, in the event of doubt as to intention to misrepresent the facts. In Arjona's case there is no room for doubt upon this point. He deliberately antedated a contract of pledge drawn by him in the form of a public instrument, and obtained the signatures of the parties thereto and of witnesses for the purpose of causing the same to be authenticated by a brother notary. The obvious and only logical explanation of his purpose is to be found in section 1766, *supra*. He obtained the signatures of the parties and witnesses and submitted this document to the notary. If Pierluisi had not detected the false date Arjona's purpose would have been accomplished.

The most charitable view that can be taken of such conduct is to characterize it as unprofessional and, therefore, as amounting to malpractice within the meaning of section 172 of the Compiled Statutes of 1911, which reads in part as follows:

"An attorney or counsellor who is guilty of any deceit, malpractice, felony or misdemeanor, in connection with the practice of his profession or who is guilty of any crime involving moral turpitude, may be suspended or removed from office by the Supreme Court of Porto Rico."

In the view here taken of the matter certain questions of law raised at the hearing, ruled upon by the court and reargued at length in the brief, need not be discussed.

Guillermo S. Pierluisi will be declared not guilty of such malpractice as would justify his disbarment or suspension from the practice of his profession at this time.

Erasto Arjona will be declared guilty of malpractice within the meaning of that term as used in the statute providing for the disbarment of an attorney who is guilty of any deceit, malpractice, felony or misdemeanor and sus-

pended from the practice of his profession as an attorney at law and as notary public for a period of two years.

Mr. Justice Texidor took no part in the decision of this case.